### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**LEROY FIELDS**                                    **CIVIL ACTION**

**versus**                                          **NO. 05-0074**

**BURL CAIN, WARDEN**                               **SECTION: "S" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. <u>See</u> 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Leroy Fields, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On  April 6, 2000, he was convicted of possession of a stolen vehicle valued over $500 in violation of La.Rev.Stat.Ann. § 14:69.[2]  On June 15, 2000, he was found to be a third offender and was sentenced as such to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence.[3]  On April 11, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari[5] which was denied on April 26, 2002.[6]

On or about February 27, 2003, petitioner filed with the state district court an application for post-conviction relief [7] which was denied on June 18, 2003.[8]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of review[9] which was denied on

---

[2] State Rec., Vol. I of II, minute entry dated April 6, 2000; State Rec., Vol. I of II, jury verdict form.

[3] State Rec., Vol. I of II, transcript of June 15, 2000, pp. 16-17; State Rec., Vol. I of II, minute entry dated June 15, 2000.

[4] State v. Fields, No. 2000-KA-1940 (La. App. 4th Cir. Apr. 11, 2001) (unpublished); State Rec., Vol. I of II.

[5] State Rec., Vol. I of II.

[6] State v. Fields, 813 So.2d 1101 (La. 2002) (No. 2001-KO-1627); State Rec., Vol. I of II.

[7] State Rec., Vol. II of II.  The application was signed by petitioner on February 27, 2003.

[8] State Rec., Vol. I of II, Judgment dated June 18, 2003.

[9] State Rec., Vol. I of II.

the merits on September 12, 2003.[10] He then filed with the Louisiana Supreme Court an application

for a writ of certiorari[11] which was denied on November 8, 2004.[12]

On or about December 9, 2004, petitioner filed this federal application for *habeas*

*corpus* relief.[13]  In support of his application, he raises the following claims:

  1.     The trial court erred in failing to instruct the jury that a

         reasonable doubt as to petitioner's guilt could arise out of a

         lack of evidence;

  2.     The bill of information was defective;

  3.     There was insufficient evidence to support petitioner's

         conviction and habitual offender adjudication;

  4.     Petitioner's habitual offender adjudication violated the *Ex*

         *Post Facto* Clause; and

  5.     Petitioner received ineffective assistance of counsel.[14]

---

[10]  <u>State v. Fields</u>, No. 2003-K-1293 (La. App. 4th Cir. Sept. 12, 2003) (unpublished); State Rec., Vol. I of II.

[11]  State Rec., Vol. I of II.

[12]  <u>State *ex rel.* Fields v. State</u>, 885 So.2d 1128 (La. 2004) (No. 2003-KH-2812); State Rec., Vol. I of II.

[13]  Rec. Doc. 2.

[14]  Because petitioner's claims as stated were often repetitive and overlapping, the Court has consolidated and reordered the claims for ease of analysis.  However, the substance of the claims has not been changed.

The state filed a memorandum in opposition to petitioner's application, arguing that the application was untimely.[15]  The state was then ordered to file a supplemental memorandum addressing the merits of petitioner's claims and any other defenses the state wished to raise.[16]  The state filed a supplemental response arguing that petitioner's claims should be denied on the merits.[17]

<u>Timeliness</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction or sentence becomes "final."  Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review.  28 U.S.C. § 2244(d)(1)(A).[18]

As noted, on April 26, 2002, the Louisiana Supreme Court denied petitioner's writ application challenging the state intermediate appellate court's judgment affirming his conviction. For AEDPA purposes, his convictions became "final" ninety (90) days later when his period expired for seeking a writ of certiorari from the United States Supreme Court.  See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R.

---

[15]   Rec. Doc. 5.

[16]   Rec. Doc. 6.

[17]   Rec. Doc. 16.

[18]   Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

13(1).[19]   Accordingly, petitioner's one-year period for seeking federal *habeas corpus* relief commenced on July 25, 2002, and expired one year later, on July 25, 2003, unless that deadline was extended through tolling.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). Two-hundred sixteen (216) days of petitioner's one-year statute of limitations elapsed prior to being tolled by the filing of his post-conviction application on February 27, 2003. Although that application was denied, tolling continued uninterrupted during the period of appellate review, so long as petitioner sought such review in a timely manner. See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004). It appears from the record that petitioner's related writ applications

---

[19] The state argues that the statute of limitations commenced earlier because petitioner's writ application was untimely filed with the Louisiana Supreme Court. The record indicates otherwise.
Louisiana Supreme Court Rule X, § 5(a) provides: "An application seeking to review a judgment of the court of appeal ... after an appeal to that court ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal ...." In the instant case, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence on April 11, 2001, and notice of that judgment was mailed that same date. State Rec., Vol. I of II, certificate of mailing. Petitioner's related writ application was mailed to the Louisiana Supreme Court in an envelope bearing a postmark dated May 8, 2001, well within his thirty-day period. Accordingly, the writ application was timely filed. Louisiana Supreme Court Rule X, § 5(d); see also Marshall v. Cain, 155 Fed. App'x 769 (5th Cir. 2005); Robichaux v. Cain, 155 Fed. App'x 119 (5th Cir. 2005).

were timely filed.[20]  Accordingly, the Court finds that tolling continued until the Louisiana Supreme Court denied writs on November 8, 2004.

At that point, petitioner had one hundred forty-nine (149) days of his one-year statute of limitations remaining.  In that his federal application was filed thirty-one (31) days later on December 9, 2004,[21] it was timely.

Because petitioner's federal application was timely filed and because the state does not contend that he failed to exhaust his state court remedies, the Court will address petitioner's claims.

<u>Standard of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

---

[20]   The state contends in its response that the related writ application was untimely filed with the Louisiana Fourth Circuit Court of Appeal. Rec. Doc. 6, p. 4.  However, the state court record does not indicate that the filing was untimely, and petitioner's "traverse," Rec. Doc. 7, provides evidence that the application was in fact timely filed.

[21]   The statement of account which accompanied petitioner's application was dated December 9, 2004. Rec. Doc. 2.  That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes.  <u>Roberts v. Cockrell</u>, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> At approximately 12:00 a.m. on October 12, 1999, New Orleans Police Officer Chad Perez was on patrol driving on Monroe Street towards Jeanette Street when he observed a green Dodge Intrepid pass the intersection traveling at a high rate of speed.  The

officer followed the vehicle and saw the driver turn right on Green Street and again on Eagle Street without using turn signals. The officer stopped the vehicle in the 8700 block of Green Street, and the driver, Mr. Fields, stepped out of the vehicle. The officer approached him and asked for his driver's license. Mr. Fields informed the officer that he did not have a driver's license. The officer arrested the defendant, handcuffed him, and placed him in the back seat of the police vehicle. Officer Perez walked to the Intrepid and attempted to turn the ignition off, but the key would not turn. Upon inspection, the officer noted that the ignition switch had been defeated. Officer Perez then ran the vehicle's license number through the NCIC computer and learned that the vehicle had been reported stolen. The officer then arrested Mr. Fields for possession of stolen property and advised him of his rights. Officer Perez contacted the crime lab and the owner of the vehicle. A crime lab technician went out to the scene and photographed the vehicle before the vehicle was towed to the auto pound. The owner of the vehicle, Bridgette LaFrance, also went out to the scene and identified the vehicle.

Bridgette LaFrance testified that she owned a green Dodge Intrepid in 1999. She reported the vehicle stolen on October 6, 1999. At approximately 2:00 a.m. on October 12, 1999, Ms. LaFrance received a phone call that her vehicle had been found. When she arrived on the scene, she observed that her vehicle had been demolished. There were dents in the doors, and the steering column had been defeated. She did not know Mr. Fields and did not give him permission to use or enter her vehicle.[22]

<u>Jury Instructions</u>

Petitioner claims that the trial court erred in failing to instruct the jury that a reasonable doubt as to petitioner's guilt could arise out of a lack of evidence. Petitioner's claim is based on La. Code Crim. P. art. 804(a)(2), which provides:

In all cases the court shall charge the jury that:

....

---

[22] <u>State v. Fields</u>, No. 2000-KA-1940, at pp. 1-2 (La. App. 4th Cir. Apr. 11, 2001) (unpublished); State Rec., Vol. I of II.

> It is the duty of the jury, in considering the evidence and applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case ....

> Petitioner's claim has no merit for two reasons.

> First, the Court finds that petitioner's claim is incorrect as a matter of state law.

Petitioner correctly notes that in State v. Mack, 403 So.2d 8 (La. 1981), the Louisiana Supreme Court held:

> A correct understanding of reasonable doubt is essential in every criminal jury trial. A vital part of that definition is the statutory formulation of C.Cr.P. 804 reasonable doubt may arise out of the lack of evidence in the case. This concept is best explained by the exact wording of the statute. Its essential ingredients are not supplied by jury instructions which merely hint at the idea embodied in the statute. In [State v. Henderson, 362 So.2d 1358 (La. 1978),] we stated that a reading of the exact language of C.Cr.P. 804 would have been preferable; today we hold such a reading to be mandatory.

Id. at 11. However, petitioner fails to note that the Louisiana Supreme Court subsequently retreated from its holding in Mack, holding:

> State v. Mack, 403 So.2d 8 (La., 1981) stated that Article 804 must be read to the jury. Mack's directive must be modified to approve either a reading of Article 804 or the giving of instructions substantially equivalent to the statute.
>
> In Mack, the charge not only failed to state that reasonable doubt could arise from lack of evidence, but also specifically limited the jurors to the evidence before them to support a reasonable doubt and prohibited them from going outside the trial evidence to find a reasonable doubt. This charge does not have the Mack defect. While not using the exact wording of the statute, this charge requires the jury to determine which facts have been proved and which facts have not been proved. Again, at another point in the charge, the jury was told to consider all the facts of the case and if they found "the evidence unsatisfactory upon any single point ... this would give rise to such a reasonable doubt" as to require a not guilty verdict. The

- 9 -

jury was instructed to consider lack of evidence in language substantially equivalent to the statutory wording.

While the exact language of LSA-C.Cr.P. art. 804 was not employed, the jury charge given did not misstate the law. Moreover, the jury was told that unsatisfactory evidence could produce reasonable doubt. Under these circumstances, the trial court's failure to employ the exact language of Article 804 does not require reversal of this conviction.

State v. Rault, 445 So.2d 1203, 1212 (La. 1984).

In the instant case, the pertinent parts of the jury charges were as follows:

All right, Ladies and Gentlemen, the Defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. The Defendant is not required to prove that he is innocent, thus, the Defendant begins the trial with a clean slate. The burden is upon the State to establish the Defendant's guilt beyond a reasonable doubt. If you are not convinced of the guilt of the Defendant beyond a reasonable doubt, you must find him not guilty. While the state must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is based upon reason and common sense. And is present when, after you have considered all of the evidence, you cannot say that you are firmly convinced of the truth of the charge against the Defendant. Likewise, if the State has proved the guilt of the Defendant to your satisfaction, and beyond a reasonable doubt, you should return a verdict of guilty.
....
... Now, as Jurors, you are the exclusive judges of the facts of this case. ... So, you are to find from the evidence which facts have been proved and which facts have not been proved.[23]

In the instant case, as in Rault, the jury instruction did not misstate the law and was

substantially equivalent to the wording of article 804(a)(2). Accordingly, even under state law,

petitioner's claim has no merit.

---

[23] State Rec., Vol. I of II, transcript of April 6, 2000, pp. 22-24.

Second, even if the jury charge was defective under state law, that alone would not warrant relief in this proceeding.  Rather, federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Issac, 456 U.S. 107, 119 (1983).

It is clear that the jury instructions here did not violate federal law.  With respect to *habeas corpus* claims challenging jury instructions, the United States Fifth Circuit Court of Appeals has held:

> [A petitioner challenging the adequacy of jury instructions] faces a extraordinarily heavy burden.  Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief.  The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of the state court's judgment is even greater than the showing required to establish plain error on direct appeal.
>
> Before a federal court may grant relief under 28 U.S.C. § 2254 based on alleged error in a state trial court's unobjected to charge, the error must be so egregious as to rise to the level of a constitutional violation or so prejudicial as to render the trial itself fundamentally unfair.  It must be established not only that the instruction was undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the fourteenth amendment, and that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.
>
> In applying these principles to the instructions in [a] case, we pay careful attention to the words actually spoken to the jury, for whether a defendant has been accorded his constitutional rights depends on the way in which a reasonable juror could have interpreted the instruction.  And we are mindful that a single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the entire charge.

<u>Tarpley v. Estelle</u>, 703 F.2d 157, 159-60 (5th Cir. 1983) (internal quotation marks, brackets, ellipsis, citations, and footnote omitted); <u>see also</u> <u>Galvan v. Cockrell</u>, 293 F.3d 760, 764-65 (5th Cir. 2002). Petitioner has fallen far short of meeting that high burden with respect to this claim.

<u>Bill of Information</u>

Petitioner alleges that the charging document in the instant case was defective. Petitioner presented that claim in his state post-conviction proceedings, where it was rejected without reasons assigned.

The sufficiency of a state charging instrument is not a matter for federal *habeas* relief unless it can be shown that the instrument is so defective that it deprives the state court of jurisdiction. <u>McKay v. Collins</u>, 12 F.3d 66, 68 (5th Cir.), <u>reh'g granted in part on other grounds sub nom.</u>, <u>Williams v. Collins</u>, 12 F.3d 70 (5th Cir. 1994) (per curiam). The United States Fifth Circuit Court of Appeals has observed that the sufficiency of a state charging instrument is fatally defective only when there are no circumstances under which there could be a valid conviction based on that instrument, and that "determination can be made *only* by looking to the law of the state." <u>Liner v. Phelps</u>, 731 F.2d 1201, 1203 (5th Cir. 1984) (internal quotation marks omitted) (emphasis in original).

Louisiana law provides:

> The information may be in substantially the following form:
> In the (Here state the name of the court.) on the _____ day of _____, 19___. State of Louisiana v. A.B. (Here state the name or description of the accused.).
> X.Y., District Attorney for the Parish of _____, charges that A.B. (Here state the name or description of the accused.) committed the offense of _____, in that (Here set forth the offense and transaction according to the rules stated in this Title. The particulars

- 12 -

of the offense may be added with a view to avoiding the necessity for
a bill of particulars.) contrary to the law of the state of Louisiana and
against the peace and dignity of the same.

La.C.Cr.P. art. 463.  Louisiana law further requires that the charging instrument set forth "a plain,

concise, and definite statement of the essential facts constituting the offense charged."  La.C.Cr.P.

art. 464.[24]

       Petitioner was charged by a bill of information which alleged:

       GEORGE T. BOURGEOIS Assistant District Attorney for the Parish
of Orleans, who in the name and by the authority of the said State,

---

   [24]  For many years, Louisiana courts insisted that charging documents be technically sufficient.
However, in State v. James, 305 So.2d 514 (La. 1974), the Louisiana Supreme Court changed
course, holding:

     [W]here in fact an accused has been fairly informed of the charge
against him by the indictment and has not been prejudiced by surprise
or lack of notice, the technical sufficiency of an indictment may not
be questioned after conviction where, as here, no objection was raised
to it prior to the verdict and where, without unfairness, the accused
may be protected against further prosecution for any offense or
offenses charged by it through examination of the pleadings and the
evidence in the instant proceeding.

Id. at 516-17.  In reaching that conclusion, the Louisiana Supreme Court noted:

     The defendant's right to know in advance of the trial
sufficient particulars as to enable him to defend himself intelligently
can be adequately protected by the bill of particulars and other
discovery devices authorized and to be authorized.  Similarly,
modern technology and the common practice of transcribing the
evidence in criminal trials, now protects him against further
prosecution for the crime for which tried by an indictment which,
although indicating the specific crime charged, might be considered
insufficient if strictly construed.

Id. at 517.

prosecutes, in this behalf, in proper person comes into the Criminal District Court for the Parish of Orleans, in the Parish of Orleans, and gives the said Court here to understand and be informed that one LEROY J. FIELDS late of the Parish of Orleans, on the 12th day of October in the year of our Lord, one thousand nine hundred and ninety-nine in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal District Court for the Parish of Orleans, did illegally and intentionally procure, receive, possess or conceal a thing of value, to wit:  an AUTOMOBILE valued at five hundred dollars or more belonging to BRIDGETTE LAFRANCE, which said thing of value had been theretofore the subject of a theft, under circumstances which indicate the said LEROY J. FIELDS, knew, or had good reason to believe that the aforesaid thing of value was the subject of a theft, contrary to the form of the Statute of the State of Louisiana in such case made and provided and against the peace and dignity of the same.[25]

Petitioner claims that the bill of information was defective because it failed to specify the make, model, year, and identification number of the automobile.  However, petitioner has cited no authority for his contention that such information must be included in the bill of information, and this Court is aware of none.  Moreover, the bill of information clearly alleged that, on October 12, 1999, petitioner illegally and intentionally possessed Bridgette LaFrance's automobile valued at five hundred dollars or more while knowing, or having good reason to believe, that the automobile was stolen.  It is beyond question that the bill of information fairly informed the defendant of the charge against him, did not prejudice him by surprise or lack of notice, and protected him against further prosecution for the same crime, and, therefore, the bill of information was not so fatally defective

---

[25]   State Rec., Vol. II of II. Petitioner argues that a "short form" bill of information is not allowed under Louisiana law for a charge of possession of stolen things.  That fact, while true, is of no moment.  Petitioner was not charged by a "short form" bill of information.

as to deprive the trial court of jurisdiction under state law.  Accordingly, petitioner is not entitled to federal *habeas corpus* relief.

<u>Sufficiency of the Evidence</u>

Petitioner claims that there was insufficient evidence to support his conviction.  The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

<u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Jackson</u>, 443 U.S. at 319).  "The <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  <u>Santellan</u>, 271 F.3d at 193 (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A sufficiency of the evidence argument presents a mixed question of law and fact. <u>Taylor v. Day</u>, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), <u>aff'd</u>, 213 F.3d 639 (5th Cir. 2000).  Therefore, this Court must defer to the state court unless its decision regarding the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's challenge to the sufficiency of the evidence, holding:

> When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged.  Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).

In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.  State v. Shapiro, 431 So.2d 372 (La. 1982).  The elements must be proven such that every reasonable hypothesis of innocence is excluded.  La. Rev. Stat. 15:438.  La. Rev. Stat. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt.  State v. Wright, 445 So.2d 1198 (La. 1984).  All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard.  State v. Jacobs, supra.

Mr. Fields was charged with and convicted of the illegal possession of stolen things, which is defined in La. Rev. Stat. 14:69(A) in pertinent part as the "intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses."  In order to sustain a conviction under La. Rev. Stat. 14:69, the State must prove that (1) the vehicle was stolen; (2) the vehicle was worth more than five hundred dollars; (3) the defendant knew or should have known that the vehicle was stolen; and, (4) the defendant intentionally possessed, received, procured or concealed the vehicle.  See State v. Riley, 98-1323 (La. App. 4 Cir. 8/4/99), 744 So.2d 664.

In the present case, Mr. Fields suggests that the State did not produce sufficient evidence to prove that the defendant knew or should have known that the vehicle was stolen.  The testimony provided at trial rebuts this argument.  Mr. Fields was driving the vehicle in question when he was stopped by the police, and left the vehicle running.  After Officer Perez arrested him for not having a driver's license, the officer proceeded to the vehicle to turn off the ignition.  When Officer Perez entered the vehicle, he observed that the key in the ignition switch did not fit into the ignition, but, rather, was stuck in the ignition and would not turn.  The officer further observed that the steering column had been defeated and there were

dents around the door lock.  Ms. LaFrance also testified that when she viewed the vehicle on the scene, she noted that the steering wheel was defeated and there were dents around the door lock.  Such evidence was sufficient to prove that the defendant knew or should have known that the vehicle was stolen.[26]

In the instant case, the state court identified the proper standard, i.e. the <u>Jackson</u> standard, and applied it in a reasonable manner.  Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim challenging the sufficiency of the evidence.

Petitioner also claims that there was insufficient evidence to support his habitual offender adjudication.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal likewise rejected that claim, holding:

Mr. Fields argues that the trial court erred when it adjudicated him a third felony offender.  The defendant contends that the State did not produce sufficient evidence to prove that his guilty plea to a prior conviction for possession of cocaine was knowingly and voluntarily made.

In <u>State v. Shelton</u>, 621 So.2d 769 (La. 1993), the Louisiana Supreme Court reviewed the jurisprudence concerning the burden of proof in habitual offender proceedings and found it proper to assign a burden of proof to a defendant who contests the validity of his guilty plea.  In <u>State v. Winfrey</u>, 97-427 (La. App. 5 Cir. 10/28/97), 703 So.2d 63, 80, <u>citing</u> <u>State v. Conrad</u>, 94-232 (La. App. 5 Cir. 11/16/94), 646 So.2d 1062, the Fifth Circuit set out the procedure for determining the burden of proof in a multiple offender hearing:

---

[26]  <u>State v. Fields</u>, No. 2000-KA-1940, at pp. 7-9; State Rec., Vol. I of II.

If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken.  Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea.  Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea.  In doing so, the State must produce either a "perfect" transcript of the <u>Boykin</u> colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an "imperfect" transcript.  If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary.

Prior to <u>State v. Shelton</u>, *supra*, the requirement for proof of <u>Boykinization</u> was a transcript of the plea of guilty or a minute entry showing an articulated waiver of the three rights.  In <u>State v. Bland</u>, 419 So.2d 1227, 1232 (La. 1982), the minute entry alone was sufficient to show that the defendant was informed of his rights where the minute entry itemized those rights.  In a footnote in the <u>Shelton</u> opinion, the Supreme Court noted that:

> ... [R]etention of the three-right articulation rule is not at issue in this case.  The plea of guilty form specifically articulates the three <u>Boykin</u> rights.  Thus, although we must herein determine whether the form plus the general minute entry are sufficient to meet the state's burden of proof, we need not today decide whether the state's burden, if any, should continue to include proof that the three rights were articulately waived.

<u>State v. Shelton</u>, 621 So.2d at 776, fn. 17.

In the present case, the State produced certified documents indicating that Mr. Fields was represented by counsel when he pled

guilty to possession of cocaine on May 18, 1993. The waiver of rights/plea of guilty form was initialed and signed by the defendant, and signed by his attorney and the trial judge. The waiver of rights form sets out the rights which Mr. Fields waived by pleading guilty. The minute entry of May 18, 1993, states that he pled guilty to possession of cocaine pursuant to Alford. [FN] The entry also indicates that the trial court advised the defendant of his rights prior to accepting the guilty plea.

> [FN] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160 (1970).

Mr. Fields contends that the plea is defective because he wrote "Alfred" instead of his initials on the plea form next to he statement that provides "I am entering a plea of guilty to this crime because I am, in fact, guilty of this crime." It is apparent that he was indicating that he was not admitting his guilt but was pleading guilty under Alford. The writing of "Alfred" instead of his initials does not make the plea defective. Mr. Fields initialed all the other statements and rights listed on the waiver of rights form, including the three Boykin rights. As the State met its burden in proving the prior conviction, the trial court correctly adjudicated the defendant to be a third felony offender.[27]

Accordingly, state law sets forth the burdens of proof in Louisiana habitual offender proceedings.

Applying that law, the state court found that the prosecution met its burden of proof to establish that petitioner was in fact a third offender. "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). In any event, petitioner has failed to establish that the state court erred in rejecting his claim.[28]

---

[27] State v. Fields, No. 2000-KA-1940, at pp. 3-5; State Rec., Vol. I of II.

[28] Moreover, if petitioner's claim were interpreted broadly as a direct challenge to the validity of the predicate conviction, that claim would be barred by Lackawanna County District Attorney v. Cross, 532 U.S. 394 (2001). In Lackawanna, the United States Supreme Court stated:

*Ex Post Facto* Claim

Petitioner's next claims that the state court's application of the habitual offender law as it existed at the time of his most recent offense rather than as it existed at the time of his prior offenses constituted a prohibited *ex post facto* application of the law.  Courts have exhaustively analyzed and rejected that argument because "[f]or the purposes of analyzing *ex post facto* implications of repeat offender statutes, the relevant offense is the current or latest crime, not the predicate offenses."  Neal v. Kaylo, No. 01-2211, 2001 WL 1195879, at *6-8 (E.D. La. Oct. 10, 2001).  For the reasons set forth at length in Neal, this Court likewise rejects the argument.

The Court notes that in petitioner's discussion of this claim he also complains that the state failed to establish the discharge dates of his prior offenses.  Out of an abundance of caution, this Court notes that, pursuant to Louisiana law, it is not necessary for the state to prove the discharge date in habitual offender proceedings if less than the "cleansing period" has elapsed between the defendant's predicate conviction and the current offense.  See id. at *8; State *ex rel.* Clark v. Marullo, 352 So.2d 223, 230 (La. 1977); see also State v. Bass, 767 So.2d 772, 781 (La.

---

> [W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Id. at 403-04 (citation omitted).  The Supreme Court noted that the Lackawanna prohibition would not apply where it is argued that the predicate conviction was unconstitutional because it was obtained where there was a failure to appoint counsel in violation of Gideon v. Wainwright, 372 U.S. 335 (1963).  Lackawanna, 532 U.S. at 404.  That limited exception is inapplicable in this case.

App. 4ᵗʰ Cir. 2000); <u>State v. Tucker</u>, 682 So.2d 261, 266 (La. App. 4ᵗʰ Cir. 1996).  In the instant case, less than the applicable ten-year "cleansing period" elapsed between the 1993 conviction for possession of cocaine and the 1999 current offense.[29]  Therefore, no proof regarding the discharge date was required.

Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective.  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  <u>See</u> <u>id.</u> at 697.  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  <u>Id.</u>

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5ᵗʰ Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5ᵗʰ Cir. 1998).

---

[29]   The Court further notes that petitioner's argument regarding the calculation of the "cleansing period" is premised on a misunderstanding of state law.  Petitioner essentially argues that the "cleansing period" requirement must be met as to all prior convictions used to enhance his current sentence.  The Louisiana Supreme Court expressly rejected that contention in <u>State v. Everett</u>, 816 So.2d 1272 (La. 2002), holding that the ten-year period applies only when determining if there is less than ten years between discharge on the immediately preceding conviction and the commission of the current offense.  If that requirement is met, then all other prior convictions may be used to enhance the current sentence regardless of when the defendant was discharged on those other convictions.

Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The state district court rejected petitioner's ineffective assistance of counsel claims, holding:  "A review of the record reflects that the counsel for defendant at all times represented his

client with diligence and filed all applicable pre-trial motions.  Petitioner failed to establish a claim under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 52 (1984)."[30]  The Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling.[31]  The Louisiana Supreme Court then denied writs without assigning reasons.[32]

Petitioner argues that his trial counsel was ineffective in numerous respects.  The Court will address each of petitioner's allegations.

First, petitioner claims that his counsel was ineffective in not objecting the trial judge's failure to expressly instruct the jury that a reasonable doubt as to petitioner's guilt could arise out of a lack of evidence.  However, as noted previously in this opinion, the jury instructions were not defective in that respect.  Accordingly, counsel was not deficient in failing to lodge such an objection and petitioner suffered no prejudice.

Second, petitioner claims that his counsel was ineffective in not presenting a "viable defense" in the case.  Specifically, petitioner contends that he rented the automobile in question from Michael Fairly[33] and informed counsel of that fact.  Petitioner contends that he did not know or have any reason to believe that the car was stolen when he rented it, and, had he known, he certainly

---

[30]  State Rec., Vol. I of II, Judgment dated June 18, 2003.

[31]  State v. Fields, No. 2003-K-1293 (La. App. 4th Cir. Sept. 12, 2003) (unpublished); State Rec., Vol. I of II.

[32]  State ex rel. Fields v. State, 885 So.2d 1128 (La. 2004) (No. 2003-KH-2812); State Rec., Vol. I of II.

[33]  Petitioner refers to the potential witness as both "Fairly" and "Fairley."

would not have rented it.[34]  Petitioner contends that he wanted counsel to call Fairly as a witness. Petitioner alleges that counsel "spoke to Fairly without petitioner's presence and then came back into the courtroom and told petitioner he would not place the witness on the stand out of fear the jury might discredit his testimony solely because he was incarcerated at the time for other offenses."[35]

To the extent that petitioner is contending that counsel failed to perform an adequate investigation into his "alibi," his claim falls woefully short.  A petitioner asserting a claim for inadequate investigation bears the burden to provide factual support for his allegations as to what further investigation would have revealed.  Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998). He has provided no factual support for his contention that the car was rented from Fairly.

To the extent that petitioner is contending that counsel should have called Fairly to testify, his claim is similarly deficient.  "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)).  To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  Petitioner furnished neither the state court nor this Court any evidence in support of his bald assertions regarding Fairly.  Petitioner has not provided an affidavit from Fairly or any other corroboration that

---

[34]  Rec. Doc. 2, supporting memorandum, p. 12.

[35]  Rec. Doc. 2, supporting memorandum, p. 28.

he would have testified in a manner consistent with petitioner's version of the facts or, for that matter, that he would have testified at trial at all.  Petitioner has, therefore, failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to call Fairly as a witness.

Additionally, it is clear from petitioner's allegations that counsel interviewed Fairly and, based on that interview, decided not to call him for a strategic reason, i.e. counsel feared that the jury would find Fairly an incredible witness.  The United States Fifth Circuit Court of Appeals has held:

> Where counsel has engaged in an adequate investigation, any strategic decision made as a result of that investigation falls within the wide range of objectively reasonable professional assistance.  A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.

Martinez v. Dretke, 404 F.3d 878, 885 (5th Cir.) (quotation marks and citations omitted), cert. denied, 126 S.Ct. 550 (2005).  This Court finds that counsel did not perform deficiently when he made a strategic choice not to call Fairly, after interviewing him, based on his lack of credibility.  See United States v. Abner, 825 F.2d 835, 844-45 (5th Cir. 1987); see also Anderson v. Johnson, 338 F.3d 382, 392 (5th Cir. 2003).

Moreover, in any event, the Court finds that no prejudice resulted from counsel's failure to call Fairly.  Even if Fairly had testified that he rented or loaned the car to petitioner, that would be of no moment.  Petitioner was not convicted of stealing the car; rather, he was convicted of simply possessing stolen property.  Considering that the car was rented or borrowed from an

obviously shady individual, had dents around the door locks, and had a defeated ignition switch, petitioner's contention that he had no reason to believe that the car was stolen is ludicrous. Even if Fairly had testified, there is no reason to believe that the result of the proceeding would have been different. Accordingly, petitioner has not shown prejudice as required by Strickland.

Petitioner next claims that his counsel was ineffective in failing "to determine whether the key found in the ignition belonged to the car and whether the ignition was actually defeated according to Perez's testimony."[36] This is simply another variation of a failure-to-investigate claim. However, as noted previously, a petitioner asserting such a claim bears the burden to provide factual support for his allegations as to what further investigation would have revealed. Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998). Petitioner does not even allege, much less provide factual support to show, that the ignition switch was not in fact defeated. Therefore, he has fallen woefully short of meeting his burden of proof to establish that his counsel was ineffective in this regard.

Petitioner next claims that his counsel was ineffective in failing to move for a "mistrial" and to file a motion for post verdict judgment of acquittal on the basis that the state failed to prove the essential elements of the crime. However, as previously noted, the state court and this Court have found that there was ample evidence to support petitioner's conviction.[37] Accordingly, any such motions would have been meritless. Counsel cannot be considered ineffective in failing

---

[36] Rec. Doc. 2, supporting memorandum, p. 29.

[37] Additionally, as the state notes, insufficiency of the evidence is not a proper ground for granting a "mistrial." See La. Code Crim. P. art. 775.

to file a meritless motion.  United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not

required by the Sixth Amendment to file meritless motions."); see also United States v. Kimler, 167

F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the

basis of a successful ineffective assistance of counsel claim because the result of the proceeding

would not have been different had the attorney raised the issue."); Sones v. Hargett, 61 F.3d 410,

415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); Clark

v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective

lawyering; it is the very opposite.").

        Petitioner next claims that counsel was ineffective in failing to challenge the state's

evidence offered at the habitual offender hearing.  However, petitioner has not demonstrated that

the evidence used in the habitual offender proceeding was inauthentic or in any way defective.

Moreover, as noted previously in this opinion, the Louisiana Fourth Circuit Court of Appeal found

that the state met its burden of proof by producing certified copies of petitioner's prior conviction

records.  Petitioner complains that the state did not produce "perfect transcripts" of his prior pleas;

however, as the appellate court noted, such transcripts are not required where, as in the instant case,

the state has met its initial burden of proof and petitioner has failed to produce affirmative evidence

showing that there was an infringement of his rights or a procedural irregularity in the taking of the

plea.  Accordingly, petitioner has not met his burden of proof in this proceeding to establish that

counsel's performance was deficient and that prejudice resulted from the failure of counsel to

challenge the state's evidence.

        Lastly, petitioner claims that counsel was ineffective in failing "to investigate any

mitigating factors to offer the court to depart from the mandatory minimum classified in the

statute."[38]  In rejecting petitioner's challenge to his sentence, the Louisiana Fourth Circuit Court of

Appeal noted that petitioner had not shown that his was an exceptional case which would justify a

deviation from the mandatory sentence:

> Mr. Fields also argues that the trial court imposed an unconstitutionally excessive sentence.  The defendant contends that although the trial court imposed the mandatory minimum sentence, the sentence was excessive under State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993).  The trial court adjudicated Mr. Fields to be a third felony offender and sentenced him to life imprisonment pursuant to La. Rev. Stat. 15:529.1(A)(1)(b)(ii).    The statute provides:
>
>> (ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
>
> Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime.  State v. Johnson, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 677; State v. Dorthey, supra.  However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentence it imposes upon habitual offenders are also presumed to be constitutional.  State v. Lindsey, 99-3256, p. 4 (La. 10/18/00), 770 So.2d 339, 342; State v. Johnson, supra at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La. App. 4 Cir. 10/26/95), 663 So.2d 525, 527.  There must be substantial evidence to rebut the presumption of constitutionality.  State v. Francis, 96-2389, p. 7 (La. App. 4 Cir. 4/15/98), 715 So.2d 457, 461.  A defendant must clearly and

---

[38]  Rec. Doc. 2, supporting memorandum, p. 31.

convincingly show that the mandatory minimum sentence under the Habitual Offender Law is unconstitutionally excessive.  State v. Lindsey, *supra* at p. 5, 770 So.2d at 343; State v. Johnson, 97-1906, at p. 11, 709 So.2d at 678.

To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:

> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

State v. Young, 94-1636 at pp. 5-6, 663 So.2d at 528.

Under the Habitual Offender Law, a defendant with more than one felony conviction is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the law.  Such a multiple offender is subjected to a longer sentence because he continues to break the law.  "[I]t is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders.  Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution."  State v. Johnson, *supra* at p. 8 (La. 3/4/98), 709 So.2d at 677.

In the case at bar, Mr. Fields had at least three prior convictions although he was only sentenced as a third offender.  His prior convictions include possession of cocaine in May of 1993, burglary of an inhabited dwelling in April of 1989, and simple robbery in April of 1986.  Thus, the trial court correctly sentenced him to life imprisonment under the multiple offender statute.  Mr. Fields has not produced evidence to suggest that his circumstances were exceptional and warrant the imposition of a lesser sentence than the mandatory life sentence.  More importantly, he did not do so at sentencing.  Because he failed to meet his burden of showing the minimum sentence was excessive, the trial court properly imposed the minimum sentence.  State v. Lindsey, *supra*; State v. Johnson, *supra*.[39]

---

[39] State v. Fields, No. 2000-KA-1940, at pp. 5-7; State Rec., Vol. I of II.

Petitioner argues that his counsel should have investigated petitioner's past for evidence that he was in fact "exceptional." Petitioner claims, for example, that counsel could have brought forth evidence to demonstrate that petitioner's prior offenses did not involve a dangerous weapon and that he "was a drug addict, father of three children, and unemployed."[40] However, while a weapon may not have been involved, petitioner's 1986 and 1989 convictions were for dangerous crimes, one of which was statutorily classified as a crime of violence. Moreover, in any event, "a defendant's record of non-violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive." State v. Smart, 926 So.2d 637, 649 (La. App. 5th Cir. 2006); see also Johnson, 709 So.2d at 676. Additionally, substance abuse is also insufficient to support a downward departure, see, e.g., State v. Guillard, 902 So.2d 1061, 1079 (La. App. 5th Cir. 2005), writ denied, 920 So.2d 233 (La. 2006), as is the fact that an offender has children, see, e.g., State v. Bazile, 757 So.2d 851, 858 (La. App. 4th Cir. 2000). Moreover, the fact that petitioner was unemployed is neither exceptional nor an excuse to turn to a life a crime, especially where there is no evidence that "he has attempted to or succeeded in obtaining skills that would prepare him for a productive life in the ... community." Bazile, 757 So.2d 858. Contrary to petitioner's contentions, he seems to be the very type of recidivist for whom habitual offender laws are designed. For all of these reasons, petitioner has not established that counsel performed deficiently in failing to investigate possible mitigating factors or to bring forth those identified by petitioner. Further, downward departures are available only in "rare situations." See, e.g., State v. Davis, 792 So.2d

---

[40] Rec. Doc. 2, supporting memorandum, p. 31.

126, 132 (La. App. 5th Cir. 2001).  Considering that high burden and the infrequency of such departures, petitioner has not established that he was prejudiced by counsel's performance.

In the instant case, the state court correctly identified the appropriate legal standard, i.e. the <u>Strickland</u> standard, in analyzing petitioner's ineffective assistance of counsel claims. Moreover, petitioner has failed to demonstrate that the state court's decision on any of his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court therefore rejects those claims.

### <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Leroy Fields be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this seventh day of July, 2006.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

- 31 -